Slip Op. 18-170

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x

TABACOS USA, INC.,                       :

                Plaintiff, :

     v.                                  : Court No. 18-00221

UNITED STATES CUSTOMS AND BORDER         :
PROTECTION,
                                :
                Defendant.
                                :
- - - - - - - - - - - - - - - - - - - -x

Opinion

[Upon defendant's demand for a greater continuous entry bond, judgment for the plaintiff importer.]

Decided: December 7, 2018

    Neil B. Mooney and Shanshan Liang, Pennington P.A., of Tallahassee, FL, for the plaintiff.

    Monica P. Triana and Hardeep K. Josan, Trial Attorneys, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the defendant. With them on the papers Joseph H. Hunt, Assistant Attorney General, and Amy M. Rubin, Assistant Director.

        AQUILINO, Senior Judge: The plaintiff commenced this action by the simultaneous filing of a summons and complaint and applications for a temporary restraining order and preliminary injunction. Upon initial consideration of those papers, the court offered defendant's counsel an immediate opportunity to be heard, whereafter a temporary restraining order entered, setting the

matter for a formal hearing in open court, at which the court decided to consolidate it with a trial on the merits pursuant to USCIT Rule 65(a)(2).

I

The object of plaintiff's plea for relief is a formal notice to it dated September 28, 2018 from defendant's Section Chief, Surety Bonds & Accounts, Debt Management Branch, Revenue Division, Office of Finance, that its continuous entry bond numbered 18C000D1D in the amount of $300,000.00

> has been determined to be insufficient to protect the revenue and insure compliance with Customs and Border Protection laws and regulations. Within 30 calendar days from the date of this letter, you must schedule to terminate this bond by 10/28/18 with a termination date no later than 11/12/18 or it will be rendered insufficient. Based on the previous 12 months of data captured 09/25/17-09/24/18 a new continuous bond with a limit of liability of not less than amount $400,000 is required.

Plaintiff's Exhibit 1 (boldface deleted).

At trial, defendant's Director, Revenue Division, Office of Finance, which oversees CBP's bond program, confirmed that his agency's continuing concern and responsibility is to protect the revenue of The United States of America. See 19 U.S.C. §1202 et seq.; trial transcript ("Tr."), pp. 109-12, 120. As a matter of policy, goods are expedited into the customs territory of this

country when entered and without having duties paid or other liabilities imposed by law, or otherwise held awaiting the final determination of duties owed or other liabilities.  See 19 U.S.C. §1484.  In order to satisfy an importer's obligations when subsequently determined to be due (because the goods will have been released from CBP's custody), Congress has delegated CBP the authority to require "such bonds or other security as . . . deem[ed] necessary for the protection of the revenue or to assure compliance with any provision of law which the Secretary of the Treasury or [CBP] may be authorized to enforce."  19 U.S.C. §1623(a).

As developed, with the input of the import and insurance communities, CBP's policy is to require single transaction bonds or continuous bonds that cover, at a minimum, 10% of the duties, taxes and fees that could be owed on an importation.  Due to disparities in the manner in which the bonding process had been previously administered by individual U.S. ports, CBP has centralized it.

The United States, as beneficiary to the contract between a surety and bond principal, is not itself a party to their contract.  CBP does not set the fees charged by the sureties for the bonds they provide, nor do its bond requirements entail any payments to the U.S. government.  Rather, those bonds are obtained

from private surety companies, which charge the importers based on the risks involved.

Before imported merchandise will be released from the custody of the United States, importers must provide evidence that they have obtained either single transaction or continuous entry bonds, or deposited cash or an authorized obligation to the United States in lieu of surety on a bond, for the entry or entries in question. And its September 28, 2018 notice, <u>supra</u>, explained that

> CBP conducts bond sufficiency review on a monthly basis. To avoid a bond stacking liability issue[1], it is in the importers best interest to forecast their import activities for the next 12 months to determine if a bond increase beyond the minimum amount stated above[ ] will be more appropriate.
>
> In order to gain a better understanding of the reason(s) for this increase, please refer to the information about current bonding formulas posted on our website . . .. This bond increase is based on the formula described as "Reviewers (1)". Customs and Border Protection requires that each entry must be covered by a valid, continuous bond or a single transaction bond (19 CFR Part 113). Notify your Customs or insurance broker and provide a copy of this letter to them. . . .

Plaintiff's Exhibit 1 (boldface deleted).

---

[1] Such issue occurs when a surety has open exposure over multiple bond periods for a particular importer. A bond period remains open so long as unliquidated entries covered by that bond remain.

The plaintiff importer sought reconsideration by CBP, which was ultimately denied. See Plaintiff's Exhibit 8. Whereupon the plaintiff instituted this action seeking the aforementioned injunctive relief from termination of its existing $300,000 continuous bond coverage and requiring a new such bond in the amount of $400,000.

II

At trial, the plaintiff proved that it opened for business in 2003; that since 2007 it has imported "value priced" tobacco products; that prior to receipt of the above-quoted demand it had been requested "only a few times" to increase its bond amount and had done so accordingly; that it filed with CBP continuous bond number 18C000D1D covering the period April 23, 2018 through April 22, 2019; that for that bond implicated in this matter, the surety holds the equivalent in value of a certificate of deposit raised by the plaintiff; that plaintiff's business has been "in a general downturn since 2014" and that, as such, its sureties have required it to fully collateralize its bonds; that the plaintiff has on deposit with surety providers $1.1 million; that subsequent to a termination herein it would not receive return of collateral for at least six months; that in order to post a new $400,000 bond it would have to find that amount in new cash to

collateralize such a bond and that it does not have and cannot raise that amount; that, in objecting to CBP's demand to increase the value of its current bond, the plaintiff provided proof that it is presently sufficient and will remain sufficient for the foreseeable future, i.e., that the bond had always been sufficient during the twelve months in question but for delay of a single container that should have arrived in August 2017 but which through no fault of the plaintiff was delayed in shipment, arriving in October 2017 and resulting in CBP's aforementioned insufficiency determination based on its 12-month-data-capture-look-back conducted on or about September 23, 2018.[2]

    The record adduced at trial by the plaintiff reflects significant proprietary information that need not be recited herein. It indicates such current inventory in a bonded warehouse that the plaintiff will not order more imports for months to come, thereby continuing to ensure the future sufficiency of its current continuous entry bond.

---

[2] According to defendant's formulation, plaintiff's delayed shipment could have led to some $17,000 in additional duties, taxes, and fees, but a fraction of the $100,000.00 in demanded supplemental coverage. See Tr., pp. 145-47.

A

Defendant's Directive 3510-004, as amended October 24, 2013, provides:

> Activity 1 - Importer or Broker - Continuous
> The bond limit of liability amount shall be fixed in an amount the district director may deem necessary to accomplish the purpose for which the bond is given. The non-discretionary bond amount minimum is $50,000. To assist the district director in fixing the limit of liability amount, the following shall be used. . . .
>
> Over $1,000,000 duties and taxes - the bond limit of liability amount shall be fixed in multiples of $100,000 nearest to 10 percent of duties, taxes and fees paid by an importer or broker acting as importer of record during the calendar year preceding the date of the application.

Guidelines for determining the amount of a bond are set forth in 19 C.F.R. §113.13(b), namely:

> . . . In determining whether the amount of a bond is sufficient, CBP will consider:
>
>     (1) The prior record of the principal in timely payment of duties, taxes, and charges with respect to the transaction(s) involving such payments;
>
>     (2) The prior record of the principal in complying with CBP demands for redelivery, the obligation to hold unexamined merchandise intact, and other requirements relating to enforcement and administration of customs and other laws and CBP regulations;
>
>     (3) The value and nature of the merchandise involved in the transaction(s) to be secured;
>
>     (4) The degree and type of supervision that CBP will exercise over the transaction(s);

      (5) The prior record of the principal in honoring bond commitments, including the payment of liquidated damages; and

      (6) Any additional information contained in any application for a bond.[3]

The plaintiff takes the position that an agency must follow its own regulations, e.g., Fort Stewart Schools v. Federal Labor Relations Authority, 495 U.S. 641, 654 (1990); that United States v. UPS Customhouse Brokerage, Inc., 575 F.3d 1376, 1382 (Fed.Cir. 2009), effectively holding "will" of 19 C.F.R. §111.1, defining "Responsible supervision and control" of customs brokers, a mandatory term and not one of discretion with respect to the factors listed therein that are to be considered by CBP, is relevant to the "will" as it appears in 19 C.F.R. §113.13(b), supra; and that applying the six factors thereof to its situation favors maintaining the bond current amount, to wit, (1) plaintiff's "impeccable" record of paying its duties, taxes, and other charges

---

[3] 19 C.F.R. §113.13(c) provides that CBP will periodically review each bond on file to determine whether the bond is adequate to protect the revenue and ensure compliance with applicable law and regulations. If CBP determines that a bond is inadequate, the principal and surety will be promptly notified in writing. The principal will have 15 days from the date of notification to remedy the deficiency. Notwithstanding the foregoing, where CBP determines that a bond is insufficient to adequately protect the revenue and ensure compliance with applicable law and regulations, CBP may provide written notice to the principal and surety that, upon receipt thereof, additional security in the form of cash deposit or single transaction bond may be required for any and all of the principal's transactions until the deficiency is remedied.

in full and on time, (2) full compliance with any CBP demands and absence of any custodial problems during the company's nearly 15 years of existence, (3) inexpensive product, (4) held in the constructive custody of CBP at all times prior to entry and release into consumption by means of plaintiff's periodic withdrawals from inventory held in a bonded warehouse (which fact is essentially "double assurance" of CBP's concerns), (5) unblemished record of honoring bond commitments, and (6) the only reason plaintiff's bond was triggered as insufficient according to CBP's bond formula was due to the late delivery of a single container, an aberrant fact that "will never repeat"; that the plaintiff risks bankruptcy in the absence of an injunction, which would mean the loss of a number of U.S.-resident jobs as well as the loss of $2-$3 million in duties, federal excise taxes and fees in annual revenue to the government; and that, on balance, the United States will not be harmed "in any way" by enjoining CBP from enforcing its demand letter because plaintiff's bond is presently and will be for the foreseeable future sufficient and thus there is no harm to the collection of revenue.

B

At trial, and in its excellent Supplemental Submission, the defendant has presented a vigorous defense. See Tr., pp. 107-80. Indeed, this court can adopt it, in pertinent part, at length:

The standard of review for actions commenced under 28 U.S.C. §1581(i) is governed by the Administrative Procedure Act. See 28 U.S.C. §2640(e)(citing 5 U.S.C. §706). Under the APA, the court will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A); *Consol. Bearings, Co. v. United States*, 412 F.3d 1266, 1269 (Fed.Cir. 2005).

The court reviews CBP's interpretations of statutes under the two-step analysis articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). First, the court determines "whether Congress has directly spoken to the precise question at issue." *Id*. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. To evaluate whether Congress has unambiguously expressed its intent, the court evaluates the

words of the statute "in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133 (2000)(internal quotation marks omitted). Here, Congress has not directly addressed how to set the minimum amount of a continuous bond. Congress has, instead, delegated to CBP the authority to establish a framework for that purpose. 19 U.S.C. §1623.

If a reviewing court determines a particular issue was not addressed by Congress, "the court does not simply impose its own construction on the statute," rather, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Indeed, when "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id*. at 843-44. These "regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to statute." *Id.* at 844.

The wisdom of an agency's legitimate policy choices, therefore, should be respected. *Suramerica de Aleaciones Laminadas, C.A. v. United States,* 966 F.2d 660, 665 (Fed.Cir. 1992). Although Tabacos is challenging the application of the

minimum bonding formula in one specific instance, its arguments implicate the entirety of CBP's framework for setting the amounts of continuous bonds[4], a framework that is entitled to deference. Because CBP's methodology is a reasonable application of the discretion granted to it by statute and is not arbitrary, capricious or contrary to statute, it must be upheld.

Defendant's Supplemental Submission, pp. 2-3 (Nov. 21, 2018).

In reciting this analysis, this court cannot and therefore does not disregard the compelling evidence adduced in this action that proves beyond any doubt that continuing plaintiff's entry bond 18C000D1D in its current amount of $300,000 will not endanger the revenue of the United States. Of course, if and when plaintiff's business were to materially change, CBP would be able to require greater surety, but demanding that herein on September 28, 2018 leaves this court unable to conclude that such demand was not an abuse of discretion within the purview of 5 U.S.C. §706(2)(A), supra.

---

[4] The court does not necessarily concur with this particular point.

                                III

In view of the foregoing, judgment must enter in favor of the plaintiff, vacating defendant's demand of September 28, 2018.

**Decided:**   New York, New York
          December 7, 2018

                                   /s Thomas J. Aquilino, Jr.
                                        Senior Judge